**In re the PEOPLE of the State of Colorado, Plaintiff, In the Interest of K.N., a Juvenile, Defendant,**

**And Concerning E.N.**

**No. 98SA371.**

Supreme Court of Colorado,
En Banc.

April 12, 1999.

Jeanne M. Smith, District Attorney, Fourth Judicial District, Robert B. Harward, Deputy District Attorney, Joan E. Teslow, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff.

Kent R.P. Gray, Colorado Springs, Colorado, Attorney for Defendant.

Justice SCOTT delivered the Opinion of the Court.

This is an original proceeding pursuant to C.A.R. 21.[1] The People (prosecution) chal-

---

1. Effective January 1, 1999, we amended C.A.R. 21, setting forth new procedures for matters in which we exercise our original jurisdiction. Among other changes under our amended rule, such cases "shall be titled, 'In Re [Caption of Underlying Proceeding].'" C.A.R. 21(e).

Moreover, under the amended Rule 21, a petitioner seeking "a rule to show cause" is to identify a "proposed respondent [who] should be the real party in interest." C.A.R. 21(b). While this matter was initiated prior to the effective date of the amendments to our rule, for purposes of this opinion we recognize K.N. as the real party in interest and therefore as the respondent before this court. We do so because even though he was not "invited" or "ordered by the court to respond," we treat his filing of a response as a

lenge the trial court's ruling allowing the defense in a first-degree sexual assault case to introduce evidence of the complaining witness' prior sexual conduct and reputation for promiscuity. The prosecution, seeking relief from that ruling, asks that we exercise original jurisdiction,[2] invoking our general superintending authority.[3] In the course of our review, we are required to construe section 18–3–407, 6 C.R.S. (1998), the Colorado rape shield statute, and determine whether it permits or prohibits the admission of evidence the trial court intends to allow.

The trial court ruled that evidence of the complainant's prior sexual conduct and reputation for promiscuity was admissible to show the state of mind of the alleged perpetrator. The prosecution contends that the trial court abused its discretion by allowing the use of evidence that is irrelevant to whether the complainant consented. The prosecution argues the trial court's ruling is contrary to section 18–3–407(2), 6 C.R.S. (1998). We agree and conclude that the trial court erred. We therefore make our rule absolute.

## I.

K.N., the respondent before us, is named in juvenile proceedings before the District Court of the Fourth Judicial District (trial court). K.N. is a seventeen-year-old male charged with conduct that, if committed by an adult, would constitute the crime of sexual assault in the first degree, in violation of section 18–3–402(1)(a), 6 C.R.S. (1998). An element of the charged offense is the use of force or violence. Under the terms of our criminal code, a person commits sexual assault in the first degree if he or she "knowingly inflicts sexual intrusion or sexual penetration on a victim ... if ... [t]he actor causes submission of the victim through the actual application of physical force or physical violence ...." § 18–3–402(1)(a). As his defense in the juvenile proceeding, K.N. asserts that the sexual encounter between K.N. and C.G. (complainant), a seventeen-year-old female, was not an assault by force or violence, but rather, was consensual sexual intercourse.

## A.

For the purposes of this proceeding, we rely upon the testimony of the complainant offered at the preliminary hearing. That testimony and the uncontroverted statements of fact in the pleadings form the basis for the facts underlying this dispute.

The complainant and K.N. first met in school. They had recently seen each other socially. K.N. invited the complainant to his house, where he lived with his parents. Along with one of K.N.'s friends, they walked to K.N.'s home.

Once at K.N.'s home, the three youths went into the basement. While in the basement, K.N. made sexual advances to the complainant, which she refused. The complainant testified that she verbally and physically resisted K.N., repeatedly told K.N. "no," and. stated that she did not want to engage in sexual intercourse. Despite her physical resistance and her verbal rejection of his advances, by the use of force and against the complainant's will, K.N. engaged in sexual intercourse with the complainant. The complainant, unable to stop K.N. or escape his control, was injured as a result. After the alleged assault, the complainant left K.N.'s house and returned to her home.

The next day, the complainant told her parents and several teachers about the alleged assault. She was subsequently treated at a hospital for injuries to her vaginal area, including a ten centimeter rip. While being treated by a nurse for those injuries, complainant informed the nurse that K.N. took her virginity. Thereafter, these juvenile pro-

"request [for] permission to respond." C.A.R. 21(j)(1).

2. Our original jurisdiction exists by virtue of our state constitution. *See* Colo. Const. art. VI, § 3 ("The supreme court shall have power to issue ... original and remedial writs as may be provided by rule of court with authority to hear and determine the same...."); C.A.R. 21(a)(1). Accordingly, we exercised our discretion and ac-

cepted original jurisdiction in response to a petition by the prosecution. In doing so, under our prior version of C.A.R. 21, we issued a rule to show cause to the district court directing it to respond to claims it exceeded its jurisdiction and abused its discretion.

3. Our authority under C.A.R. 21 is coextensive with our "general superintending control over all ... courts." *See* Colo. Const. art. VI, § 2(1).

ceedings were initiated against K.N. After a preliminary hearing, probable cause was found to charge K.N. with sexual assault. The matter was then set for trial in July 1998.

### B.

A few months before trial, K.N. filed his motion and supporting affidavit asking that he be permitted to introduce evidence of the complainant's prior sexual conduct and reputation for promiscuity.[4] K.N. proposed to admit the evidence through the testimony of two witnesses, friends of K.N., who, he claimed, would testify from personal knowledge.

In his motion, K.N. claimed the testimony should be admitted based on two statements that the prosecution concedes were made by the complainant. The complainant's first statement was made to K.N. while resisting his advances. When K.N. asked why she did not want to have sex with him, the complainant stated if she did so it would cause her to have a bad reputation and that she did not want "to be looked at as a ... slut." Complainant's second statement was made to a nurse while she received medical treatment. She told the nurse that K.N. "took [her] virginity."

K.N. argued to the trial court that, in light of the foregoing statements made by the complainant and his consent defense, he may introduce evidence of the complainant's sexual history. K.N.'s motion was accompanied by an affidavit disclosing the particular evidence that K.N. would offer at trial.

According to the affidavit filed with the motion, an unnamed investigator located the two friends of K.N. who would testify on behalf of the defense. The witnesses would testify that: (1) they previously had consensual sexual intercourse with the complainant; (2) the complainant had a reputation for promiscuity; and (3) K.N. was aware of the complainant's reputation at the time of the alleged sexual assault.

The prosecution filed a written objection to the motion, invoking section 18–3–407. The prosecution claimed that, in light of the facts of this case, our rape shield statute makes the complainant's sexual history inadmissible because it is irrelevant to K.N.'s defense that the complainant consented.

### C.

On May 18, 1998, the trial court held a general motions hearing to rule on pending motions in this and other cases. The trial court heard, in open court, K.N.'s offer of proof to admit evidence of the complainant's sexual history.

The offer of proof was made without calling witnesses. At least twice during the hearing, however, the prosecution indicated that the trial court was not following the statutory procedure set forth in section 18–3–407. In doing so, the prosecution asked the trial court to reject any finding that K.N.'s offer of proof was sufficient. The prosecution further argued that if the court found the offer of proof to be sufficient, the prosecution was entitled to notice before any hearing under section 18–3–407(2)(c). Finally, the prosecution stated that, in accordance with the rape shield statute, any such hearing, after notice, would have to be conducted in camera rather than through the open court proceeding of the May 18 motions hearing.

Despite the prosecution's various objections, the trial court ruled that: (1) the offer of proof was sufficient, and (2) the two witnesses could testify at trial as to their prior sexual experiences with the complainant and as to their understanding that K.N. was aware of the same at the time of the events in question. However, the trial court did not decide whether the witnesses could testify as to the complainant's reputation for promiscuity. Instead, the court solicited additional offers of proof from K.N., which were to be presented ex parte, purportedly in order to prevent the prosecution from gaining undue access to information regarding K.N.'s defense through the subsequent offers of proof.

The trial court, sua sponte, continued the July trial date to September in order to reconsider its evidentiary rulings. In August, the trial court issued an order declaring that its previous rulings would stand and

---

4. For convenience, we will refer to the testimony of complainant's prior sexual conduct and reputation for promiscuity as the "complainant's sexual history."

allowing the defense to offer evidence of complainant's reputation for promiscuity.

On petition of the prosecution, we issued our rule to show cause to review the evidentiary rulings of the trial court. For the reasons set forth below, we now make that rule absolute and direct the trial court to vacate its prior rulings admitting evidence of the complainant's sexual history.

## II.

■ In construing the rape shield statute, as with legislation in general, our primary task is to give effect to the intent of the legislature. *See People v. Murphy,* 919 P.2d 191, 194 (Colo.1996). In order to discern the legislative intent, we first look to the meaning of the words used in the statute, and if the language is not ambiguous, we rely upon the plain meaning of the words used. *See City of Westminster v. Dogan Constr. Co.,* 930 P.2d 585, 590 (Colo.1997); *People v. Davis,* 794 P.2d 159, 180 (Colo.1990).

## A.

We begin our analysis, therefore, with the Colorado rape shield statute, section 18–3–407. An examination of section 18–3–407 reveals it is neither purely procedural nor purely substantive. *See People v. McKenna,* 196 Colo. 367, 371, 585 P.2d 275, 277 (1978). Rather, its nature is "mixed." *Id.* By its plain language, section 18–3–407 limits a trial court's authority to admit evidence of a complainant's sexual history and prescribes the manner by which any evidence of such sexual history may be admitted.

In its first section, the rape shield statute provides:

(1) Evidence of specific instances of the victim's ... prior ... sexual conduct, ... and reputation evidence of the victim's ... sexual conduct shall be presumed to be irrelevant except:

    (a) Evidence of the victim's ... prior or subsequent sexual conduct with the actor;

    (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.

§ 18–3–407(1), 6 C.R.S. (1998).

First, the rape shield statute generally "bars evidence of [prior] sexual conduct." *Murphy,* 919 P.2d at 194. The rape shield statute begins with the unmistakable statement that evidence of a complainant's sexual history "shall be presumed to be irrelevant." As a consequence, then, the force of the statute generally makes a complainant's sexual history inadmissible. *See* CRE 402 ("All relevant evidence is admissible.... *Evidence which is not relevant is not admissible.*") (emphasis added); *Murphy,* 919 P.2d at 195 ("The Rape Shield Statute ... creates a presumption that evidence of prior sexual conduct is irrelevant."); *People v. Carlson,* 677 P.2d 390, 392 (Colo.App.1983), *aff'd,* 712 P.2d 1018 (Colo.1986) (evidence having no logical relation to any contested issue at trial is irrelevant and should not be admitted for consideration by the jury).

Second, such evidence is admissible only through three exceptions explicitly set forth in the rape shield statute. The statute delineates two explicit exceptions in subsections 407(1)(a) and 407(1)(b), and provides a third exception in subsection 407(2)(e), where "evidence is otherwise relevant to a material issue in the case." § 18–3–407(2)(e).

Section 18–3–407(1) permits the introduction of evidence of prior sexual conduct if it is evidence of a complainant's prior sexual conduct with the accused, or if it is evidence of sexual activity to show the charged offense was not committed by the accused. *See* § 18–3–407(1)(a) and (b); *see also Murphy,* 919 P.2d at 195.

We assume for purposes of this proceeding, and the parties agree, that the explicit statutory exceptions in section 407(1) are not applicable here. Therefore, if the trial court's ruling is to be upheld, as K.N. asserts, it must be based upon section 407(2).

Accordingly, we turn our focus upon section 18–3–407(2), which provides in material part:

In any criminal prosecution [for sexual assault in the first degree] ... if evidence, that is not excepted under subsection (1) ... is to be offered at trial, the following procedure shall be followed:

    (a) A written motion shall be made at least thirty days prior to trial ... to the

court and to the opposing parties stating that *the moving party has an offer of proof of the relevancy and materiality* of [the] evidence of specific instances of the victim's ... prior ... sexual conduct ... or reputation....

(b) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall notify the other party of such and set a hearing to be held in camera prior to trial. In such hearing, the court shall allow ... a full presentation of the offer of proof including, but not limited to, the presentation of witnesses.

....

(e) [After] the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim ... *is relevant to a material issue to the case,* the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted. *The moving party may then offer evidence pursuant to the order of the court.*

§ 18–3–407(2), 6 C.R.S. (1998) (emphasis added).

Once again relying upon the statute's plain language, a complainant's sexual history is only admissible if the proponent can establish "the relevancy and materiality of evidence ... proposed to be presented." § 18–3–407(2)(a). The trial court, then, may allow only the admission of such evidence that "is relevant to a material issue to the case." § 18–3–407(2)(e).

■ Consistent with this clear language, we have held that in cases involving sexual assault by force or violence, "an independent showing of the defendant's awareness of nonconsent by the [complainant] is unnecessary" in such prosecutions because use of force or violence negates consent. *Dunton v. People,* 898 P.2d 571, 573 (Colo.1995). In essence, then, where the material issue at trial is whether the complainant consented to the sexual contact, the understanding or state of mind of the accused regarding the complainant's sexual history is neither material nor relevant to the issue of whether the complainant consented.

### B.

While section 18–3–407(2) creates an exception to the presumption against admitting evidence of a complainant's sexual history, the exception exists only for relevant and material evidence of a complainant's sexual history which the moving party seeks to admit in accordance with specific procedural requirements. Under section 18–3–407(2), a movant must first file a written motion with the court and serve it upon the opposing parties, stating that the movant "has an offer of proof of the relevancy and materiality" of evidence of a complainant's sexual history. *See* § 18–3–407(2)(a). That motion must be accompanied by an affidavit stating the offer of proof. *See* § 18–3–407(2)(b).

■ CRE 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In determining whether evidence is relevant, a court must first decide "whether the proffered evidence is legally material to some factual issue in the case." *People v. Carlson,* 712 P.2d 1018, 1021 (Colo.1986). If the evidence is not legally material to a factual issue, then the evidence is simply inadmissible. *See id.* If the court finds that the offer of proof is sufficient, then the court must follow specific procedures as set forth in the statute.[5]

To understand fully what the General Assembly intended as relevant evidence under

---

5. Assuming that the offer of proof is deemed sufficient by the trial court, the trial court "shall notify the [non-moving] party of such and set a hearing to be held in camera prior to trial." § 18–3–407(2)(c). At that in camera hearing, the court "shall allow the questioning of the victim ... regarding the offer of proof," and must also allow "a full presentation of the offer of proof including, but not limited to, the presentation of witnesses." *Id.* This in camera hearing may be held during the trial if the evidence does not become available prior to trial or for good cause shown. *See* § 18–3–407(2)(d). Finally, at the conclusion of the in camera hearing, if the court finds that the evidence offered "is relevant to a material issue to the case, the court shall order that the evidence may be introduced and pre-

our rape shield statute, we must examine what practices prompted its enactment. Prior to the enactment of Colorado's rape shield statute, the sexual history of the complainant in a sexual assault case was often admitted in order to undermine her credibility and to draw inferences as to her conduct during the time in question. *See McKenna*, 196 Colo. at 371, 585 P.2d at 277. Then, if consent was asserted by the defendant as a defense, the prevailing legal theory was that where a complainant had previously engaged in consensual sexual conduct with others, a jury was justified in drawing "a logical conclusion that it was more probable that she had consented to the sexual act giving rise to the prosecution." *Murphy*, 919 P.2d at 194–95. Obviously, then, before the adoption of the rape shield statute, there was little or no analysis employed as to whether there was any logical connection between a complainant's prior sexual history and whether a complainant had consented to sexual relations with the accused. *See id.; McKenna*, 196 Colo. at 371, 585 P.2d at 277.

In essence, despite CRE 404(b) and its common law predecessors, which eschew the use of prior acts to draw unpermitted inferences as to character, prior practice permitted the admission of character evidence to create inferences that have no direct correlation to either the alleged sexual assault in question or a material issue in the case. This way of thinking, however, eventually evolved into the reasoned practices of today:

> As critical thought and analysis have been brought to bear on these issues, it has become apparent that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent. In fact in many cases, cross-examination probing her sexual history has served only to put her on trial instead of the defendant.

*McKenna*, 196 Colo. at 371, 585 P.2d at 278.

Section 18–3–407 was enacted, then, to give to sexual assault victims necessary "protection from humiliating and embarrassing public 'fishing expeditions' into their past sexual conduct, unless a showing is made that the evidence would be relevant to some issue in the case." *Murphy*, 919 P.2d at 194;

(citing *McKenna*, 196 Colo. at 371, 585 P.2d at 278). In addition, "the legislature ... declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *McKenna*, 196 Colo. at 372, 585 P.2d at 278.

Thus, the rape shield statute embodies our state public policy regarding, and alters prior rules governing, the admission of evidence of the sexual history of complainants of sexual assaults. Moreover, Colorado's rape shield statute reflects a legislative recognition that sexual assault is "not primarily a sex offense and certainly not a crime of passion, but rather a hostile crime of violence and domination calculated to humiliate, injure and degrade the female." *McKenna*, 196 Colo. at 371, 585 P.2d at 278 (internal quotation marks omitted).

### III.

We now apply the rape shield statute to the offer of proof in this case by first addressing the form of the motion filed by K.N. as required by section 18–3–407(2)(a). After addressing the form of the motion, we then turn to the sufficiency of K.N.'s offer of proof. As set forth below, because we conclude that K.N.'s offer of proof did not establish the relevancy of the proffered evidence, it was not sufficient as a matter of law. Therefore, we need not and do not address the prosecution's arguments regarding the propriety of the motions hearing held May 18, 1998.

### A.

The prosecution contends that the form of the affidavit does not satisfy the statute. Specifically, the prosecution contends that the submission of the affidavit by defense counsel is insufficient because it is not the affidavit of a witness. The prosecution rationalizes that, since the General Assembly requires a separate sworn offer of proof, there is an implied need for direct information. We disagree and find the form of both the motion and the affidavit to be acceptable.

Upon our review, it appears that the temporal requirements of section 18–3–407(2)(a)

scribe the nature of the evidence or the questions to be permitted." § 18–3–407(2)(e).

have been met. Defense counsel timely filed the motion, and served it on the court and the prosecution. In addition, the motion stated that the defense had an "offer of proof of the relevancy and materiality of evidence of specific instances ... [and] reputation evidence of the [complainant's] ... sexual conduct ...." § 18–3–407(2)(a).

■ The plain language of section 18–3–407(2)(b) requires only that the written motion "be accompanied by an affidavit in which the offer of proof shall be stated." A fair reading of the statute does not indicate any limitations upon, nor does it identify, who may or may not be an affiant. There is no requirement that a person who is or may be a witness at the trial be the affiant, nor is there a prohibition against defense counsel being the affiant. We do not see any requirement imposed by the General Assembly that the affiant be a witness, nor do we see an implied need in the statute for "direct information," as the prosecution contends. Indeed, if the General Assembly had intended to limit who may be the affiant, it would have made that requirement explicit in the plain language of the statute, as it did with other requirements. *See PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo. 1995) ("[I]t may be presumed that the General Assembly meant what it clearly said.").

However, fidelity to the form of motion and affidavit requirements of the statute alone does not guarantee that the movant will prevail on an offer of proof. Sufficiency of the offer of proof is controlled elsewhere in our statute and is dependent upon a showing of relevancy to an issue at trial.

### B.

We turn now to address whether the defendant's offer of proof was sufficient to establish the relevancy and materiality of evidence regarding specific instances of the complainant's sexual history. Contrary to the trial court, we hold that the offer of proof was insufficient as a matter of law to establish that the evidence of specific instances of the complainant's sexual history were relevant to the material issue in the case: did the complainant on this occasion consent to sexual intercourse with K.N.[6] We further hold that the trial court erred by ruling that the evidence, irrelevant on its face, was admissible in the juvenile proceedings.

Defense counsel argued vigorously that the offered testimony—that the complainant had had sexual intercourse at least twice previously—was relevant, and therefore admissible, because it went to *K.N.'s* state of mind as to whether the *complainant consented.* K.N. acknowledges that it was impermissible to imply that since the complainant had allegedly had sex before, she must have consented to having sex with K.N. Nevertheless, he argues that his knowledge of her sexual history would render her consent more probable. Relying on *People v. Moreno*, 739 P.2d 866 (Colo.App.1987), K.N. contends that the evidence of the complainant's sexual history is admissible to show K.N.'s knowledge or state of mind at the time of the alleged assault. We are not persuaded.

■ In light of our recent decision in *Dunton v. People*, 898 P.2d 571 (Colo.1995), K.N.'s reliance upon *Moreno* is misplaced. To the extent that K.N. argues that *Moreno* should be read to hold that if a defendant is aware of his complainant's reputation for promiscuity, then evidence of the reputation is admissible as to defendant's state of mind, we disagree and disapprove of any such reading of *Moreno*.[7] In our view, *Dunton* controls the result in this case.

6. By our holding today, we do not express any view as to the admissibility of statements offered solely to rebut affirmative evidence of the complainant's credibility. As in *Murphy*, should the prosecution offer evidence related to the complainant's sexual history, then a defense that addresses such claims might be appropriate. However, such evidence may only become appropriate *when and if* the prosecution has "opened the door" to the admission of such testimony, not based on the offer of proof submitted in this case.

7. In *Moreno*, the court of appeals affirmed a trial court's ruling that evidence of complainant's reputation for promiscuity was irrelevant. *See* 739 P.2d at 867. In so doing, by way of dicta, the court of appeals reasoned that because there was no indication that the defendant was aware of complainant's reputation, "there was nothing offered from which the trial court could find that the evidence was relevant to defendant's state of mind, his lack of intent, or his perception that the complainant had consented to *his* advances." *Id.* While this statement in *Moreno* may give K.N.

In *Dunton,* the defendant was convicted of first-degree sexual assault. *See* 898 P.2d at 573. His defense was that the encounter was consensual, and on appeal he contended that the trial court should have instructed the jury that the prosecution had to demonstrate his awareness of the victim's nonconsent. *See id.* at 572–73. We held that in a prosecution for first-degree sexual assault by force or violence, an evidentiary showing demonstrating a defendant's awareness of nonconsent by the victim was unnecessary. *See id.* at 573.

Here, similarly, K.N.'s state of mind regarding the complainant's reputation is irrelevant to the issue of consent. It is not K.N.'s state of mind which is at issue, rather, it is whether the complainant consented. Like the defendant in *Dunton,* K.N. is charged with first-degree sexual assault by force or violence. Assuming, arguendo, that the complainant had in fact engaged in consensual sexual intercourse with one or more other individuals, and assuming further that K.N. was aware of this sexual history, complainant may not have consented to sexual contact with K.N. Her sexual history, and K.N.'s awareness of that history, do not make it more probable that she consented.

■ K.N. also argues that his knowledge of the complainant's sexual history is relevant and material to an issue at trial. We disagree. As we held in *Dunton,* the accused's knowledge of the alleged victim's sexual history cannot justify his behavior or mitigate his culpability under our sexual assault statute.

Therefore, we conclude that evidence of the complainant's sexual history introduced through the two witnesses identified in K.N.'s offer of proof only fosters an impermissible inference, namely, that prior sexual activity demonstrates that the complainant did not refuse K.N.'s sexual advances. We hold that, on this record, K.N. has failed to overcome the presumption that evidence of

the complainant's sexual history is irrelevant to any material issue in the case.

### C.

■ K.N. also argues that the complainant's sexual history is admissible in order to attack her credibility as a witness, especially in light of her statement made to the treating nurse that K.N. had taken her virginity. Because the complainant's statement to the treating nurse goes to a collateral issue, we disagree and conclude that the statute also bars that evidence under these circumstances. K.N.'s theory is that, according to his witnesses, the complainant had engaged in prior sexual conduct and was not a virgin; hence, she necessarily lied to the nurse. Thus, K.N.'s logic continues, the jury may infer that the complainant is also lying about whether she consented to the sexual relationship at issue here. In other words, as part of his defense, K.N. seeks to impugn the complainant's credibility by using her sexual history against her.

■ Extrinsic evidence is generally inadmissible to contradict a witness' testimony on a collateral matter. *See Banek v. Thomas,* 733 P.2d 1171, 1178 n. 7 (Colo.1986). A matter is considered collateral "when it has no independent significance and thus would not be independently provable regardless of the impeachment." *Id.* (citing *Bishop v. People,* 165 Colo. 423, 428, 439 P.2d 342, 344–45 (1968); *McCormick on Evidence* § 47, at 110 (E. Cleary 3d ed.1984)).

Here, whether complainant was a virgin at the time of the alleged assault has no independent significance and is not independently provable. For example, in *People v. Diaz,* 644 P.2d 71, 72–73 (Colo.App.1981), a defendant charged with reckless manslaughter claimed she acted in self defense against the victim, who she alleged attempted to rape her. The trial court permitted cross-examination of the defendant regarding her sexual

comfort, we suggest any such comfort should be short-lived and, in this case, is of no effect.

Despite the obvious similarity to this case, we do not read the holding of *Moreno* to suggest that a defendant's understanding of a complainant's reputation mandates the admission of evidence of that reputation. Rather, we view the court of appeals as merely recognizing that before reputa-

tion evidence may be admitted to show defendant's state of mind, defendant's knowledge of that reputation must be first established. As the prosecution stated aptly during the motions hearing, even conceding that K.N. was aware of the complainant's reputation for promiscuity, that fact would appropriately relate only to K.N.'s "opportunistic" state of mind.

activity on the afternoon of the offense. *See id.* In reversing and ordering a new trial, the court of appeals held that such evidence was collateral, and therefore inadmissible, to the extent that the prosecution could not have inquired into her conduct as part of the case in chief. *See id.;* see also *People v. Vialpando,* 804 P.2d 219, 223 (Colo.App.1990) (victim's sexual history not relevant to issue of victim's credibility).

■ Here, too, the evidence of the complainant's statement to the treating nurse is collateral to the extent that the defense cannot question her regarding her statement unless the issue is raised by the prosecution. *See Murphy,* 919 P.2d at 195–97 (at trial, if the prosecution opens the door to an issue, the defendant may inquire into the issue regardless of its prior inadmissibility).

## IV.

■ In sum, the Colorado rape shield statute bars the use of evidence of a sexual assault complainant's sexual history as presumptively irrelevant. As discussed above, on this record, K.N. has not overcome the statutory presumption set forth in section 18–3–407(1), that the complainant's sexual history is irrelevant to a determination of whether the complainant consented to the sexual contact. By adopting section 18–3–407, the General Assembly sought to avoid the danger of subjecting sexual assault complainants to an embarrassing public display of the most intimate details of the complainant's life. Moreover, and at least equally as important, the statute was designed to bar irrelevant evidence from the jury's consideration that has no bearing on either the complainant's credibility or the issue of consent. Under the statute, the legislature mandated that trial courts abide by certain substantive and procedural safeguards. We hold that K.N.'s offer of proof was insufficient as a matter of law, since it failed to indicate any relevancy between the proffered testimony, evidence of the complainant's sexual history, and the issue of consent. We further hold that, on this record, the trial court's ruling allowing the use of such evidence is contrary to the statutory commands of section 18–3–407, and hence, exceeds the discretion and authority of our trial courts.

Accordingly, we make our rule absolute, vacate the trial court's orders, direct the trial court to conduct further proceedings consistent with this opinion, and order such evidence inadmissible.